UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-60041-CIV-ALTONAGA/Strauss

JIMMY JEAN-BAPTISTE NOEL,

      Plaintiff,

v.

ANTONIO ARIAS, *et al.*,

      Defendants.

_____/

**ORDER**

      **THIS CAUSE** came before the Court on Defendants, Antonio Arias ("Arias"), Jorge

Pacheco ("Pacheco"), Matthew Porterfield ("Porterfield"), Larry Reyes ("Reyes"), and David

Santiago's ("Santiago['s]; collectively, the "Defendants[']") Motion for Final Summary Judgment

[ECF No. 65], filed on March 30, 2020.  Plaintiff, Jimmy Jean-Baptiste Noel, filed a Response in

Opposition [ECF No. 70]; to which Defendants filed a Reply [ECF No. 73].  The Court has

carefully considered the Amended Complaint [ECF No. 50], the parties' written submissions,[1] the

record, and applicable law.

## I.      BACKGROUND

      This case arises out of two encounters between Plaintiff and Ft. Lauderdale Police

Department officers in 2013 and 2014.  (*See generally* Am. Compl.).  Plaintiff is a resident of

Broward County, Florida.  (*See id.* ¶ 3).  Defendants, named in their individual capacities, are

police officers and employees of the Ft. Lauderdale Police Department.  (*See id.* ¶¶ 4–9).

---

[1] The parties' factual submissions include: Defendants' Statement of Facts in Support of their Motion for Final Summary Judgment ("Defs.' SOF") [ECF No. 64]; Plaintiff's Response to Defendants' Statement of Facts and Affirmative Statement of Facts ("Pl.'s SOF") [ECF No. 69]; and Defendants' Reply Statement of Facts in Support of Defendants' Motion for Final Summary Judgment ("Defs.' Reply SOF") [ECF No. 72].

CASE NO. 18-60041-CIV-ALTONAGA/Strauss

***The August 22, 2013 arrest.*** On August 22, 2013, Plaintiff and non-party, Antonio Grant ("Grant"), were detained and arrested following a traffic stop initiated by Reyes and two non-party Ft. Lauderdale Police Department detectives. (*See* Pl.'s SOF ¶ 26). Five days later, Plaintiff filed a complaint with internal affairs against Reyes and the two detectives claiming officer misconduct — specifically, unlawful battery and search. (*See id.* ¶ 27; Pl.'s Resp. . . . Interrogs. ("Pl.'s Resp. Interrogs.") [ECF No. 68-2] ¶ 9). Plaintiff subsequently filed a lawsuit[2] against Reyes and the two detectives in this District (*see* Pl.'s SOF ¶ 28); Grant also initiated a lawsuit[3] as a result of the August 22 arrest, recovering $30,000.00 in a settlement (*see id.* ¶ 29).

***The January 8, 2014 arrest***. On January 8, 2014, Defendants arrested Plaintiff for delivery of cocaine within one thousand feet of a school and resisting arrest with violence.[4] (*See* Defs.' SOF ¶ 1). The incident began when Defendants, while patrolling for narcotics activity, observed Plaintiff in the area of Northeast 13th Street and Northeast 5th Avenue in Ft. Lauderdale, Florida. (*See id.* ¶¶ 1–3). Defendants were travelling in an unmarked, narcotics minivan driven by Pacheco. (*See id.* ¶ 4). While on patrol, Reyes identified Plaintiff and directed Defendants' attention to Plaintiff, advising he had probable cause to arrest Plaintiff because a confidential informant previously purchased narcotics from Plaintiff in August 2013.[5] (*See id.* ¶¶ 1, 4). Pacheco quickly executed a U-turn and stopped near Plaintiff. (*See id.* ¶ 4). The record is not clear about exactly what transpired next.

---

[2] *Jean-Baptiste Noel v. Gross*, No. 16-cv-62637, Compl. [ECF No. 1] filed Nov. 8, 2016 (S.D. Fla. 2016).

[3] *Grant v. Gross*, No. 15-cv-61128, Compl. [ECF No. 1] filed May 29, 2015 (S.D. Fla. 2015).

[4] Plaintiff's resisting-arrest-with-violence charge was upgraded to battery on a law enforcement. (*See* Pl.'s SOF ¶ 51). Following a trial, Plaintiff was found not guilty of the battery charge. (*See id.*).

[5] While Plaintiff disputes whether Defendants had probable cause to arrest him, Plaintiff states the factual dispute is immaterial, as the validity of the arrest is not being contested. (*See* Resp. 10 n.2).

*Plaintiff's version of events.*   Plaintiff claims while talking on his cellphone, Defendants, all of whom were plainclothes officers, pulled up and exited the vehicle with their guns drawn. (*See* Pl.'s SOF ¶ 36).   Defendants neither announced their purpose nor identified themselves, although Plaintiff recognized Reyes as a police officer.  (*See id.* ¶ 37).  Porterfield secured Plaintiff with handcuffs and did so without any resistance from Plaintiff.  (*See id.* ¶ 39).  Porterfield handed Plaintiff over to Santiago (*see id.* ¶ 40), spitting in Plaintiff's face in the process (*see id.* ¶ 50). Santiago escorted Plaintiff to the van without Plaintiff resisting.  (*See id.* ¶¶ 40–41).

Despite Plaintiff's compliance and non-resistance, Santiago physically lifted Plaintiff by the back of his pants (*see id.* ¶ 41) and "slammed [Plaintiff] headfirst into the van[]" (*id.*; *see also* Pl.'s Dep. [ECF No. 68-1] 82:3).[6]  Plaintiff, who was secured by handcuffs (*see* Pl.'s SOF ¶ 39), landed on his forehead and collarbone, coming into contact with the vehicle's floorboard (*see* Pl.'s Dep. 86:17–24).  Plaintiff did not resist, pull or push away, or attempt to flee the scene.  (*See* Pl.'s SOF ¶ 42; Pl.'s Dep. 82:7–14, 125:15–127:12).  At no point did Plaintiff refuse to enter the vehicle or disobey instructions.  (*See* Pl.'s SOF ¶ 42; Pl.'s Dep. 126:2–5).

Once inside the vehicle, both Reyes and Santiago punched and kicked Plaintiff.  (*See* Pl.'s SOF ¶ 46; Pl.'s Resp. Interrogs. ¶ 10).  While this occurred, the other Defendants were "no less than six feet away" and "in[side] the van."  (Pl.'s Dep. 74:16–21 (alteration added)).  Reyes and Santiago continued to strike Plaintiff while the Defendants "rode off with [Plaintiff]."  (*Id.* 89:5 (alteration added); *see also id.* 89:3–4).  Plaintiff claims he felt "like [he was] . . . unconscious." (*Id.* 77:17–18 (alterations added)).

Plaintiff remained face-down in the van for the entire ride to the processing center at the jail.  (*See* Pl.'s SOF ¶ 45). While lying face-down, Reyes searched Plaintiff's pants and buttocks,

---

[6] Citations to deposition testimony rely on the pagination and line numbering in the original document.

finding $6,660.00 in Plaintiff's wallet. (*See id.* ¶¶ 47, 49). Defendants discussed how they planned to keep a portion of Plaintiff's money, deciding to inventory $1,660.00 and retaining $4,000.00 for themselves. (*See id.* ¶¶ 47–48). Plaintiff complains of permanent issues with his eyesight and emotional damages following the incident. (*See* Pl.'s Resp. Interrogs. ¶ 15).

*Defendants' version of events.* Defendants exited the van and immediately overheard Plaintiff on his cellphone giving away his current location. (*See* Defs.' SOF ¶¶ 5–6). Fearing a potential ambush, Defendants attempted to secure Plaintiff swiftly in order to prevent him from fleeing the scene. (*See id.* ¶ 5). To accomplish Plaintiff's arrest, Porterfield proceeded to place Plaintiff in handcuffs. (*See id.* ¶ 6). At that time, Plaintiff did not physically resist but did yell. (*See id.*). Santiago escorted Plaintiff to the van. (*See id.*).

Plaintiff refused to enter the vehicle, jumping on the floorboard and screaming to an unidentified individual present at the scene. (*See* Pacheco Dep. [ECF No. 63-2] 22:11–16). Plaintiff then "step[ed] up on the lip of the van" and "look[ed] over the van." (Santiago Dep. [ECF No. 63-3] 29:25–30:1 (alterations added)). Attempting to gain control of Plaintiff, who was still secured by handcuffs, Santiago ordered Plaintiff to stop, but Plaintiff "pushe[d] off the lip of the van" causing Santiago's back to hyperextend. (*Id.* 30:4 (alteration added); *see also id.* 30:5–12; Defs.' SOF ¶ 11).

Santiago "grabb[ed] [Plaintiff] by his arm" and "push[ed] him on to the seat." (Santiago Dep. 30:10–11 (alterations added)). Plaintiff "start[ed] kicking wildly[,]" striking Santiago multiple times. (*Id.* 30:16–17 (alterations added); *see also id.* 30:17–18; Defs.' SOF ¶ 10). Santiago "jump[ed] on [Plaintiff]" and "str[uck] [Plaintiff] several times[]" with "really short quick punches based on the space" Santiago had. (Santiago Dep. 30:18, 20–23 (alterations added);

4

*see also* Defs.' SOF ¶¶ 11–12).  The struggle lasted less than a minute.  (*See* Defs.' SOF ¶¶ 7, 13).  No other force was used against Plaintiff.  (*See id.* ¶ 15).

Reyes had no physical involvement in Plaintiff's arrest.  (*See id.* ¶ 8).  Reyes neither kicked nor punched Plaintiff during Santiago and Plaintiff's struggle.  (*See id.*).  Arias and Reyes observed Plaintiff strike Santiago with his legs and feet.  (*See id.* ¶¶ 9–10).  Pacheco, while positioned in the driver's seat, "casually" "looked back" and observed a "struggle going on" with Plaintiff face-down.  (Pacheco Dep. 24:14, 17–18).  Porterfield, who was seated in the front-passenger seat, "did not observe anything[]" but did "hear[] [Plaintiff] hit . . . Officer Santiago[.]"  (Porterfield Dep. [ECF No. 63-4] 36:8, 19–20 (alterations added)).  Neither Pacheco nor Porterfield observed anything unreasonable or that required intervention.  (*See* Defs.' SOF ¶ 22).

After Plaintiff complied with commands, Santiago conducted a search of Plaintiff, which consisted of a "pat down to the belt area, groin area, each pant leg, waist, waistline and emptying of [Plaintiff's] pockets[.]"  (*Id.* ¶ 16 (alterations added)).  Defendants did not conduct a body cavity search of Plaintiff.  (*See id.* ¶ 17).  Santiago removed Plaintiff's wallet and handed the cash to Arias.  (*See id.* ¶ 18).  Arias counted exactly \$1,660.00 and did so in Plaintiff and the other Defendants' presence.  (*See id.*).  Santiago did not hear any comments regarding Defendants' intent to pocket Plaintiff's money.  (*See id.* ¶ 25).  Porterfield recounted the money again at the jail in front of cameras.  (*See id.* ¶ 19).  A Property Report, prepared by Reyes, lists the calculated money total as \$1,660.00.  (*See* Offense Incident Report [ECF No. 63-9] 7).[7]

***The Amended Complaint.***  Plaintiff's Amended Complaint contains five claims for relief: a claim under 42 U.S.C. section 1983 for excessive force in violation of the Fourth Amendment against Reyes and Santiago ("Count I"); a claim under section 1983 for failure to intervene against

---

[7] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Porterfield, Arias, and Pacheco ("Count II"); a First Amendment retaliation claim against Reyes

("Count III"); a battery claim against Reyes and Santiago ("Count IV"); and a conversion claim

against Santiago ("Count V").  (*See generally* Am. Compl.).  Defendants seek summary judgment

as to all but one claim for relief.[8]  (*See generally* Mot.).

## II.     LEGAL STANDARD

Summary judgment may only be rendered if the pleadings, discovery and disclosure

materials on file, and any affidavits show there is no genuine issue as to any material fact and the

movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a), (c).  An issue of fact

is "material" if it might affect the outcome of the case under the governing law.  *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is "genuine" if the evidence could lead a

reasonable jury to find for the non-moving party.  *See id.*; *see also Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court draws all reasonable inferences in favor

of the party opposing summary judgment.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th

Cir. 2000).

If the non-moving party bears the burden of proof at trial, the moving party may obtain

summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact

as to any essential element of a non-moving party's claim, and (2) showing the Court that there is

not sufficient evidence to support the non-moving party's case.  *See Blackhawk Yachting, LLC v.*

*Tognum Am., Inc.*, No. 12-14209-Civ, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015)

(citations omitted).  "Once the moving party discharges its initial burden, a non-moving party who

bears the burden of proof must cite to . . . materials in the record or show that the materials cited

---

[8] As to Count V — conversion claim against Santiago — Defendants argue the state-law claim should be dismissed once summary judgment is entered on Plaintiff's federal claims.  (*See* Mot. 14–15).  Because one federal claim survives summary judgment (Count I), the Court will not dismiss the pendent state law claim.

do not establish the absence or presence of a genuine dispute." *Id*. (citing Fed. R. Civ. P. 56(c)(1); alteration added; internal quotation marks omitted).

"Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts." *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-cv-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citation omitted). Indeed, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment" and proceed to trial. *Id.* (alteration added; citations omitted).

### III. ANALYSIS

#### A. Count I – Excessive Force against Reyes and Santiago

##### a. Whether Reyes and Santiago's use of force against Plaintiff was excessive

Plaintiff claims Reyes and Santiago used excessive force against him during the January 2014 arrest. (*See* Am. Compl. ¶¶ 24–32). "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citation omitted). "[J]udicial scrutiny of an officer's use of force requires balancing of the individual's Fourth Amendment interests against the relevant government interests." *Moore v. Gwinnett Cty.*, -- F. App'x --, 2020 WL 1046612, at *5 (11th Cir. Mar. 4, 2020) (alteration added; internal quotation marks and citation omitted).

The Fourth Amendment's "objective reasonableness" standard governs the Court's inquiry. *Hinson v. Bias*, 927 F.3d 1103, 1117 (11th Cir. 2019) (internal quotation marks and citation omitted). "That means [the Court] determine[s] whether the seizure was objectively reasonable from the perspective of a reasonable officer on the scene." *Shaw v. City of Selma*, 884

F.3d 1093, 1099 (11th Cir. 2018) (alteration adopted; other alterations added; internal quotation marks, citation, and footnote call number omitted).  The Court looks "at the fact pattern from the perspective of a reasonable officer on the scene with the knowledge of the attendant circumstances and facts, and balance[s] the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate."  *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009) (alteration added; citation omitted).  "Although suspects have a right to be free from force that is excessive, they are not protected against a use of force that is necessary in the situation at hand." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) (internal quotation marks and citations omitted).

"Because there are no 'bright line' rules for determining when an officer's use of force goes from being necessary to excessive, the analysis requires weighing 'all the circumstances.'" *Holloway v. Diaz*, No. 11-23069-Civ, 2013 WL 5372846, at *5 (S.D. Fla. Sept. 25, 2013) (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997)).  In particular, the Court looks to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Hinson*, 927 F.3d at 1117 (identifying other factors to consider when assessing the Fourth Amendment's "objective reasonableness" standard).

Defendants argue Reyes and Santiago are entitled to summary judgment on Plaintiff's excessive force claim. (*See* Mot. 4–5).  According to Defendants, "the record evidence establishes . . . Reyes did not use any force at all against Plaintiff and that all three of the *Graham* factors support [] Santiago's reasonable use of force against Plaintiff."  (*Id.* 5 (alterations added)).  Defendants emphasize: (1) Plaintiff was arrested for a serious crime — the delivery of cocaine within one thousand feet of a school; (2) Plaintiff was an immediate threat because he forcefully

kicked Santiago and compromised Defendants' undercover status and operations; and (3) Plaintiff

actively resisted and attempted to evade arrest.  (*See id.*).  Defendants' position, however, suffers

from one fatal (and obvious) defect — it ignores Plaintiff's contention and testimony Reyes and

Santiago used excessive force while Plaintiff was secured by handcuffs, in custody, obeying

commands, and not resisting.  (*See* Resp. 3–5).

The Eleventh Circuit has "repeatedly ruled that a police officer violates the Fourth

Amendment . . . if he or she uses gratuitous and excessive force against a suspect who is under

control, not resisting, and obeying commands." *Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir.

2014) (alteration added; collecting cases).  It is undisputed Plaintiff was handcuffed when Santiago

escorted him to the vehicle.  (*See* Defs.' SOF ¶ 6; Offense Incident Report 9).  Plaintiff testified

he neither resisted nor kicked Santiago, nor attempted to pull away or flee from Santiago.  (*See*

Pl.'s Dep. 82:7–14, 125:15–127:12).  Despite being under control, not resisting, and obeying

commands, Santiago "slammed [Plaintiff] headfirst into the van."  (Pl.'s SOF ¶ 41 (alteration

added)).   Then, while still handcuffed and compliant, Reyes and Santiago "punch[ed] and

kick[ed]" Plaintiff "[a]s [Defendants] rode off with [Plaintiff]."  (Pl.'s Dep. 89:3–5 (alterations

added); *see also* Pl.'s Resp. Interrogs. ¶ 10).[9]  Plaintiff's statements directly contradict Defendants'

version of events, requiring denial of the requested summary judgment.  *See Gomez v. United*

*States*, 601 F. App'x 841, 850 (11th Cir. 2015) ("[T]he application of gratuitous force on an

_____

[9] Defendants contend Plaintiff's interrogatory answers should be disregarded because the answers were "not verified until after the Defendants' Motion was timely filed, after the discovery cutoff and a week after Plaintiff requested an extension of time to respond to Defendants' Motion." (Reply 3).  The Court will consider Plaintiff's answers.  Defendants do not state they were prejudiced in any way by the late verification, and they were provided an opportunity to address Plaintiff's answers in their Reply.  In any event, Plaintiff testified Reyes and Santiago "punch[ed] and kick[ed]" Plaintiff "[a]s [Defendants] rode off with [him][]" — the subject matter Defendants ask the Court to disregard in Plaintiff's interrogatory answers. (Pl.'s Dep. 89:3–5 (alterations added)).

already-handcuffed and compliant detainee or arrestee constitutes excessive force in violation of the Fourth Amendment, even if there is no visible or compensable injury." (alteration added)).

In their Reply, Defendants insist Plaintiff's "speculation about what occurred or who did what during the time he testified he was unconscious, blacked out, passed out, and/or lying facedown does not create a genuine issue of material fact in light of the Defendants' unequivocal testimony about what occurred." (Reply 4). Said differently, Defendants state their testimony is more credible than Plaintiff's, and as such, the Court should credit Defendants' version of events over Plaintiff's. The Court will not — and cannot — do what Defendants request: weigh conflicting evidence and make credibility determinations to resolve disputed factual issues. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255 (alterations added); *see also Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (explaining the district court "misapplied the clear dictates of our summary judgment law by assuming hotly contested facts against the non-moving party.").

At bottom, Plaintiff's evidence creates a genuine issue of fact as to whether the amount of force Reyes and Santiago used on Plaintiff after he was handcuffed and compliant was excessive. *See, e.g.*, *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (officer's single punch to the plaintiff's stomach while he was handcuffed and not struggling or resisting was excessive); *Lee*, 284 F.3d at 1198 (officer's slamming of the plaintiff's "head against the trunk *after* she was arrested and secured in handcuffs[]" was excessive (alteration added; emphasis in original)); *Lucas v. Cabezas*, No. 17-cv-61277, 2019 WL 78981, at *3 (S.D. Fla. Jan. 2, 2019) (denying summary judgment because a "genuine issue of material fact remain[ed] with respect to whether the amount

10

of force [the d]efendants used on [the p]laintiff after he had already been handcuffed was excessive." (alterations added)).

### b. Qualified Immunity

Regarding Count I, Defendants also contend Reyes and Santiago are entitled to summary judgment because undisputed facts support their qualified immunity defense. (*See* Mot. 5–7). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (internal quotation marks omitted; quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To be entitled to the qualified immunity defense, a government official must demonstrate "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (internal quotation marks and citations omitted). Plaintiff does not dispute Reyes and Santiago were acting "within the scope of [their] discretionary authority," so Plaintiff bears the burden of showing Reyes and Santiago are not entitled to qualified immunity. *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (alteration added). Plaintiff can show qualified immunity is not appropriate by establishing (1) Reyes and Santiago's conduct violated his constitutional rights; and (2) the constitutional violation was clearly established at the time. *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citations omitted). These two requirements may be addressed in any order. *See id.* (citation omitted).

11

Defendants contend Plaintiff cannot establish the first prong — that Reyes and Santiago violated his constitutional rights. (*See* Mot. 7). According to Defendants, "there was no constitutional violation because [] Reyes and Santiago did not use excessive force in arresting Plaintiff." (*Id.* (alteration added)). To this, Plaintiff insists Reyes and Santiago do not enjoy qualified immunity. (*See* Resp. 5–6). Plaintiff contends Reyes's and Santiago's force — the punches, kicks, physical slam, and intrusive search — was used while Plaintiff was already-handcuffed and compliant, which, according to Plaintiff, constitutes a Fourth Amendment violation. (*See id.* 6). The Court agrees with Plaintiff.

Accepting Plaintiff's version of events as true, as the Court must do, Reyes and Santiago are not entitled to qualified immunity.[10] *See, e.g.*, *Kjellsen v. Mills*, 517 F.3d 1232, 1236 (11th Cir. 2008) ("This Court accepts the plaintiff's version of the facts and then answers the legal question of whether the defendants are entitled to qualified immunity under that version of the facts." (alterations adopted; internal quotation marks and citation omitted)). Plaintiff's version, if true, describes conduct that would violate the Fourth Amendment. Plaintiff maintains he did not "resist, struggle or attempt to flee[]" (Resp. 6 (alteration added)), and yet, Santiago and Reyes used excessive and gratuitous force against him (*see* Pl.'s Dep. 82:3, 89:3–5; Pl.'s Resp. Interrogs. ¶ 10).[11] Qualified immunity does not "immunize officers who use excessive and gratuitous force

---

[10] Aside from general rule statements, and noting Reyes and Santiago acted within their discretionary authority, Defendants provide no meaningful qualified immunity analysis. (*See* Mot. 5–7). Simply stating no constitutional violation occurred, followed by the conclusion Reyes and Santiago enjoy qualified immunity, is unpersuasive and wastes judicial resources. (*See id.* 7). Defendants make no argument — nor could they — that under Plaintiff's version of events, in which he is secured by handcuffs, not resisting, obeying commands, and compliant, Reyes and Santiago could slam, punch, and kick Plaintiff during an arrest without violating the Fourth Amendment. *See, e.g.*, *Alexandre v. Ortiz*, 789 F. App'x 169, 176 (11th Cir. 2019) ("Our caselaw is clearly established that the use of gratuitous force on a non-resisting arrestee would violate the Fourth Amendment." (citation omitted)).

[11] Tellingly, in their Reply, Defendants offer no rebuttal to Plaintiff's qualified immunity contentions nor discuss Plaintiff's cited authorities. (*Compare* (Resp. 5–6) *with* (Reply 1–5)). Instead, Defendants insist

after a suspect has been subdued, is not resisting, and poses no threat." *Saunders*, 766 F.3d at 1269–70; *see also Hadley*, 526 F.3d at 1330 ("Our cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."); *Lucas*, 2019 WL 78981, at *3 ("[The p]laintiff contends [] [the d]efendants used excessive force against him after he was handcuffed, which would constitute a violation of his Fourth Amendment rights." (alterations added; citing *Gomez*, 601 F. App'x at 850)).

In short, Reyes and Santiago are not entitled to qualified immunity.  Count I may proceed.[12]

## B.  Count II – Failure to Intervene against Porterfield, Arias, and Pacheco

In Count II, Plaintiff asserts a claim against Porterfield, Arias, and Pacheco based upon their failure to intervene during Reyes and Santiago's alleged use of excessive force.  (*See* Am. Compl. ¶¶ 33–40).  "[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007) (alteration added; internal quotation marks and citations omitted).  "This liability, however, only arises when the officer is in a position to intervene and fails to do so." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000).  "Instances of force that occur within seconds do not place officers in a realistic position to intervene." *Johnson v. White*, 725 F. App'x 868, 878 (11th Cir. 2018).

---

that the Court side with their version of events over Plaintiff's.  (*See* Reply 1–5).  This, the Court will not do.

[12] Defendants do not address whether Plaintiff's alleged constitutional violation was clearly established at the time the incident occurred.  Certainly, a "handcuffed, non-resisting suspect's right to be free from excessive force was clearly established by February 2002 or about [twelve] years before the alleged incident in this case occurred." *Saunders*, 766 F.3d at 1268 (alterations adopted; other alteration added; internal quotation marks and citation omitted).

Defendants contend Porterfield, Arias, and Pacheco are entitled to summary judgment on Plaintiff's failure-to-intervene claim. (*See* Mot. 7–10). According to Defendants, the "undisputed evidence establishes [] Pacheco, Arias, and Porterfield did not witness any excessive force or body cavity search and did not have sufficient time or opportunity to intervene when Santiago quickly struck [Plaintiff] three or four times." (Reply 7 (alterations added)). To this, Plaintiff contends that because Porterfield, Arias, and Pacheco were in a position to intervene but failed to do so, summary judgment in their favor is inappropriate. (*See* Resp. 6–8). Plaintiff insists these Defendants had ample opportunity to prevent Reyes and Santiago's excessive use of force. (*See id.* 7). The Court sides with Defendants.

Critically, Plaintiff concedes the following fact is undisputed: "Arias could not intervene as [the incident] happened very quickly and [Arias] did not have time to intervene." (Defs.' SOF ¶ 13 (alterations added; capitalization omitted); Pl.'s SOF ¶ 13 (writing "Plaintiff does not dispute the facts stated in Paragraph 13[]" (alteration added))). Plaintiff's admission corroborates Defendants' testimony the alleged incident evolved rapidly. (*See* Arias Dep. [ECF No. 63-5] 31:5–6 (stating "the event began and was over very quickly."); Porterfield Dep. 33:20–22 (testifying he observed the incident for a "[c]ouple [of] seconds" and that "[i]t wasn't enough time for anyone to do anything wrong." (alterations added)); Pacheco Dep. 25:6–7 (noting the struggle lasted "probably less than maybe a minute[,] [a] minute or less." (alterations added))).

Plaintiff's concession further supports Porterfield and Pacheco's contention they were not in a realistic position to intervene.[13] (*See* Mot. 7; Reply 5–8). This is because Arias was in the "middle captain seat area right behind the driver [Pacheco] and the passenger [Porterfield][]" —

---

[13] Santiago testified by the time the other officers were aware of the struggle, "it was already over." (Santiago Dep. 46:18).

in other words, Arias was positioned closest to Plaintiff.[14]   (Arias Dep. 28:9–10 (alterations

added)).  If Arias was not in a position to intervene, as Plaintiff admits, then certainly Porterfield

and Pacheco — situated a farther distance from Plaintiff — were not in positions to intervene.[15]

(*See* Defs.' SOF ¶ 13; Pl.'s SOF ¶ 13).

By Plaintiff's own admission, the incident "happened very quickly" and thus, Porterfield,

Arias, and Pacheco "did not have time to intervene" in Reyes and Santiago's alleged use of

excessive force.  (Defs.' SOF ¶ 13; *see* Pl.'s SOF ¶ 13); *see also Johnson v. White*, 725 F. App'x

868, 878 (11th Cir. 2018) (no liability for other officers' failure to intervene where the "whole

incident lasted only a few seconds and evolved rapidly");  *Marantes v. Miami-Dade Cty.*, 649 F.

App'x 665, 672 (11th Cir. 2016) (no liability where officer kicked the plaintiff four times in rapid

succession without warning, leaving insufficient time for the other officers to issue a verbal

command or physically prevent that officer from kicking the plaintiff); *Brown v. City of Huntsville,

Ala.*, 608 F.3d 724, 740 n.25 (11th Cir. 2010) ("Because the relevant events happened so quickly,

the record does not reflect any point at which [another officer] could have intervened to prevent

[the defendant-officer's] use of excessive force, especially pepper spray, on [the plaintiff]."

(alterations added)).

Undeterred, Plaintiff contends Porterfield, Arias, and Pacheco "had ample opportunity to

observe and intervene in the use of force by Reyes and Santiago."   (Resp. 7 (capitalization

omitted)).  For support, Plaintiff relies on the following facts: (1) "[w]hen Plaintiff was slammed

into the van, the other Defendants were all less than six feet away[]" (Pl.'s SOF ¶ 44 (alterations

---

[14] Pacheco testified Plaintiff was brought into the van from the "rear passenger side of my van." (Pacheco Dep. 22:11–12).

[15] Plaintiff does not dispute: (1) "Pacheco was in the driver's seat and is unaware of what [Pacheco] saw[]" (Pl.'s SOF ¶ 7 (alterations added; capitalization omitted)); and (2) "Porterfield was facing forward in the passenger seat" when the incident occurred  (*id.* ¶ 9 (capitalization omitted)).

added)); and (2) "[o]nce Plaintiff was in the van Reyes and Santiago [] punched and kicked Plaintiff[] (*id.* ¶ 46 (alterations added)). Contrary to Plaintiff's insistence, these facts do not lead to an inference there was time or an opportunity for Porterfield, Arias, or Pacheco to intervene, especially given Plaintiff's admission they *were not*.

The Eleventh Circuit has made clear the non-intervenor officer must be "in a position to intervene yet failed to do so." *Hadley*, 526 F.3d at 1331 (citation omitted). Plaintiff "has simply not presented evidence that any [officer], and specifically [Porterfield, Arias, or Pacheco], had an opportunity or was in a position to intervene but failed to do so." *Johnson*, 725 F. App'x at 878 (alterations added; citation omitted); *see also Keating*, 598 F.3d at 764 (explaining a successful failure-to-intervene claim requires evidence "showing the necessity or real opportunity for the defendant-officers to intervene in a fellow officer's unlawful conduct." (citation omitted)). Quite the contrary. Plaintiff admits Arias, the officer who was in closest proximity to Plaintiff, could not have intervened because the incident "happened very quickly" and there was no "time to intervene." (Defs.' SOF ¶ 13; *see* Pl.'s SOF ¶ 13). Plaintiff's admission confirms Porterfield, Arias, and Pacheco had *no* opportunity to intervene. Porterfield, Arias, and Pacheco are therefore not liable for failing to intervene in Reyes's and Santiago's alleged use of excessive force.

Viewed in the light most favorable to Plaintiff, the record does not raise a triable issue of fact that Porterfield, Arias, and Pacheco could have intervened to prevent Reyes's and Santiago's alleged use of excessive force. Plaintiff's failure-to-intervene claim in Count II fails.

**C. Count III – First Amendment Retaliation against Reyes**

In Count III, Plaintiff claims Reyes subjected him to retaliation in violation of the First Amendment. (*See* Am. Compl. ¶¶ 41–50). "Retaliation against the exercise of First Amendment rights is a well-established basis for section 1983 liability." *O'Boyle v. Sweetapple*, 187 F. Supp.

16

3d 1365, 1370 (S.D. Fla. 2016) (citations omitted). For Plaintiff to prevail on his First Amendment retaliation claim, he must establish "(1) he engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and the defendant's retaliatory actions." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016) (citations omitted). "Showing injury alone is insufficient, the retaliatory motive must be the 'but-for' cause of the adverse action." *Turner v. Williams*, No. 3:19-cv-641, 2020 WL 1904016, at *3 (M.D. Fla. Apr. 17, 2020) (citation omitted); *see also Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011) (explaining the plaintiff must show "the defendant was subjectively motivated to take the adverse action because of the protected speech." (citation omitted)).

Reyes contends Plaintiff fails to establish a causal connection between the alleged retaliatory motive and unconstitutional conduct. (*See* Mot. 10–11). Specifically, Reyes maintains Plaintiff proffers no evidence of any causal connection between Reyes's alleged excessive use of force and Plaintiff's internal affairs complaint and subsequent lawsuit. (*See id.*; Reply 8–9). The Court agrees — Plaintiff fails to satisfy the third element of his First Amendment claim.[16]

Plaintiff contends Reyes was subjectively motivated to use excessive force because of Plaintiff's previously-filed lawsuit against Reyes. (*See* Am. Compl. ¶¶ 45–46; Resp. 9); *see also Jean-Baptiste Noel*, No. 16-cv-62637 (S.D. Fla. 2016). Plaintiff primarily — if not entirely — relies on the fact Reyes "spoke to Plaintiff about the previous lawsuit" when "Defendants arrived

---

[16] Reyes does not dispute Plaintiff satisfies the first element of his First Amendment retaliation claim. (*See* Mot. 10–13). Because Plaintiff fails to establish the third element — causation — the Court need not address the second element — whether defendant's conduct adversely affected Plaintiff's protected speech. "If the non-moving party fail[s] to make a showing on an essential element of his case with respect to which he ha[s] the burden of proof, then the entry of judgment as a matter of law is appropriate." *Webb-Edwards v. Orange Cty. Sheriff's Office*, 525 F.3d 1013, 1029 (11th Cir. 2008) (alterations added; citation omitted).

17

on scene." (Pl.'s SOF ¶ 38; *see also* Resp. 9). This is problematic for two reasons. First, Plaintiff

provides no citations to the record to support this fact. (*See* Pl.'s SOF ¶ 38). Second, Plaintiff's

lawsuit was filed in November 2016 — well after Reyes allegedly used excessive force against

Plaintiff in January 2014. Reyes could not have possibly retaliated against Plaintiff in January

2014 for a lawsuit that was filed in November 2016. *See Alston v. City of Darien*, 750 F. App'x

825, 834–35 (11th Cir. 2018) (finding the plaintiff failed to establish causation where the

defendant's retaliatory act occurred before the plaintiff's protected activity).

Plaintiff then attempts to raise an issue of fact by pointing to the internal affairs complaint

he filed in August 2013 against Reyes. (*See* Resp. 9; Pl.'s SOF ¶ 27). Rather confusingly, Plaintiff

contends the internal affairs complaint, when considered with the 2016 lawsuit, shows Reyes acted

with a retaliatory motive in January 2014. (*See* Resp. 9). Not so. The record evidence establishes

Reyes was motivated by Plaintiff's narcotics sale of cocaine, not Plaintiff's internal affairs

complaint (and certainly, not his 2016 lawsuit). (*See* Reply 8–9). Plaintiff neither rebuts Reyes's

testimony Plaintiff was stopped and arrested because probable cause existed for a serious crime

(*see* Reyes Dep. 26:11–19); nor does Plaintiff address Reyes's testimony he was neither bothered

by nor aware of any allegations against him in Plaintiff's 2016 lawsuit (*see id.* 16:4–5, 21:13–20).

Plaintiff offers no evidence or facts suggesting Reyes used excessive force *because of*

Plaintiff's internal affairs complaint.[17] Simply stating Plaintiff filed an internal affairs complaint

---

[17] The Court is aware Plaintiff testified that when his "head" was "slammed[,]" *Santiago* "[l]et [him] know [about] the Internal Affairs incident[.]" (Pl.'s Dep. 82:19–23 (alterations added)). Plaintiff's testimony does not change the outcome of the Court's analysis for two reasons. First, Plaintiff does not cite (or reference) this testimony in his argument. (*See* Resp. 8–10); *see also Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) ("A party cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions." (internal quotation marks and citation omitted)). Second, and most importantly, Plaintiff's retaliation claim is actuated by *Reyes*'s use of force, not Santiago's. (*See* Am. Compl. ¶ 47). Plaintiff "cannot raise a new, unpled claim at the summary judgment stage." *Coleman v. Bowden*, 797 F. App'x 422, 430 (11th Cir. 2019) (citation omitted).

four months prior to the alleged incident, combined with an unsupported reference to a 2016 lawsuit, is not enough to establish causation, especially given Reyes's testimony suggesting no retaliatory motive whatsoever. *See Indigo Room, Inc. v. City of Fort Myers*, 589 F. App'x 938, 947 (11th Cir. 2014) (finding the plaintiff did not establish causation where the defendant's testimony showed he was not subjectively motivated to retaliate against the plaintiff and where there was no evidence in the record to contradict the defendant's position).

Because the record evidence does not show a retaliatory motive, and Plaintiff's lone, unsupported fact does not create a genuine dispute of fact for trial, summary judgment will be entered in favor of Reyes on Count III.

### D. Count IV – Battery against Reyes and Santiago

Plaintiff asserts a state law battery claim against Reyes and Santiago. (*See* Am. Compl. ¶¶ 51–55). "Florida law provides that 'a presumption of good faith attaches to an officer's use of force in making a lawful arrest and an officer is liable for damages only where the force used is clearly excessive. A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances.'" *Sullivan v. City of Pembroke Pines*, 161 F. App'x 906, 911 (11th Cir. 2006) (alteration adopted; emphasis omitted; quoting *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996)). "And because the right under the Florida Constitution to be free from unreasonable searches and seizures is construed in lockstep with the Fourth Amendment to the U.S. Constitution, the 'excessive force' analysis for a battery claim is identical to the 'excessive force' analysis under the Fourth Amendment." *Cordoves v. Miami-Dade Cty.*, 92 F. Supp. 3d 1221, 1238 (S.D. Fla. 2015) (citations omitted).

Reyes and Santiago contend summary judgment is appropriate on Plaintiff's battery claim because Reyes and Santiago are entitled to summary judgment on Plaintiff's excessive force claim.

19

(*See* Mot. 13–14).  Yet the Court has already concluded Reyes and Santiago *are not* entitled to summary judgment on Plaintiff's excessive force claim under the Fourth Amendment.  *See* Part III, A., *supra*.  For the same reasons, the Court will not grant summary judgment in favor of Reyes and Santiago on Count IV.  *See Jean-Baptiste v. Jones*, 424 F. Supp. 3d 1251, 1263 (S.D. Fla. 2019) ("For the same reasons we concluded that the force used by the officer [was] clearly excessive under the law of this Circuit, we also conclude that it was clearly excessive according to the similar standard set forth under Florida law." (alterations adopted; other alteration added; quoting *Sullivan*, 161 F. App'x at 911)).

## IV.    CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED t**hat Defendants, Antonio Arias, Jorge Pacheco, Matthew Porterfield, Larry Reyes, and David Santiago's Motion for Final Summary Judgment **[ECF No. 65]** is **GRANTED in part** and **DENIED in part.** Defendants' Motion is **DENIED** with respect to **Counts I, IV, and V**.  Summary judgment is granted in favor of Defendants, Porterfield, Arias, and Pacheco as to **Count II**; and in favor of Defendant Reyes as to **Count III**.

**DONE AND ORDERED** in Miami, Florida, this 13th day of May, 2020.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record